UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS WILLIAMS,

      Petitioner,

-vs-                                     Case No.  8:12-CV-973-T-27TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## ORDER

Petitioner, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging convictions for armed burglary, attempted murder, first-degree murder, and shooting within an occupied building entered in 2004 by the Tenth Judicial Circuit Court, Polk County, Florida (Dkt. 1). Respondent filed a response to the petition (Dkt. 9) with exhibits (Dkt. 10), and Petitioner filed a reply to the response (Dkt. 15). Upon consideration, the petition will be denied.

## PROCEDURAL HISTORY

On August 20, 2004, a jury convicted Petitioner of armed burglary, attempted murder, first-degree murder, attempted home invasion robbery, and shooting within an occupied building (Resp. Ex. 23, Vol. I at record pp. 226-30). Petitioner was sentenced to a term of life imprisonment on both the first-degree murder count and the armed burglary count, a term of 25-years' imprisonment on the attempted home invasion robbery count, a term of 20-years imprisonment on the attempted murder count, and a term of 15-years imprisonment on the shooting within an occupied building count (Id. at record pp. 263-73). On July 26, 2006, the state appellate court affirmed without written opinion (Resp. Ex. 4); *Williams v. State*, 935 So. 2d 11 (Fla. 2d DCA 2006) [table].

On March 7, 2007, Petitioner filed a motion for post-conviction relief pursuant to Florida Rules of Criminal Procedure, Rule 3.850 ("Rule 3.850 motion"), alleging six claims of ineffective assistance of trial counsel (Resp. Ex. 8 at "Exhibit A").[1]  On February 11, 2008, Petitioner filed his Motion to Submit Revised Ground to Motion for Post Conviction Relief ("motion to revise") in which he requested to "revise" Ground 1B of his Rule 3.850 motion (Resp. Ex. 6).  On March 20, 2008, the state post-conviction court dismissed, without prejudice, the motion to revise, stating that the Court's files did not contain Petitioner's Rule 3.850 motion (Resp. Ex. 7).  On April 14, 2008, Petitioner filed his Motion for Reconsideration to which he attached a copy of the Rule 3.850 motion he claimed he previously filed (Resp. Ex. 8).  On May 27, 2008, the state post-conviction court filed its Order on Defendant's Motion for Reconsideration, Motion for Post Conviction Relief and Motion to Submit Revised Ground to Motion for Post Conviction Relief in which the court denied several claims, and directed the State to respond to the three remaining claims (Resp. Ex. 9).  On June 4, 2008, Petitioner filed his Addendum to Pending 3.850 Motion in which he alleged three additional ineffective assistance of trial counsel claims (Resp. Ex. 10).  On August 29, 2008, the State filed its Response to the Court's Order on Defendant's Motion for Reconsideration, Motion for Post Conviction Relief and Motion to Submit Revised Ground to Motion for Post Conviction Relief (Resp. Ex. 11).  On September 15, 2008, the state post-conviction court filed its Order on Defendant's Addendum to Pending 3.850 Motion and Order to Show Cause in which the court

---

[1]Respondent contends that "the record at the state level did not contain said [Rule 3.850] motion." (Dkt. 9 at p. 3, fn.1). However, the Court takes judicial notice of information available on June 11, 2015, on the database maintained by the Clerk of the Court, Tenth Judicial Circuit, Florida, https://www2.myfloridacounty.com/ccm/do/docket?q1=1i_25F6bNFrlNcqk4qg6MA&q2=d579b22fd82a4de4d291e 35f2bfd5625, which indicates, in pertinent part, that "Deft's Motion for Post Conviction Relief 3.850" was entered on the Court's docket on March 9, 2007. See Fed.R.Evid. 201(c)-(d); *United States v. Mercado*, 412 F.3d 243, 247-48 (1st Cir. 2005) (taking judicial notice of state-court docket entries).

denied one claim, dismissed a second claim as facially insufficient, and directed the State to respond to the third claim (Resp. Ex. 12). On November 14, 2008, the State filed its Response to the court's Order on Defendant's Addendum to Pending 3.850 Motion and Second Order to Show Cause (Resp. Ex. 13). On November 17, 2008, Petitioner filed his Amendment to Issue I (Claim 9) of Addendum to Pending 3.850 Motion (see Resp. Ex. 14). On November 21, 2008, the state post-conviction court filed its Order on Defendant's Motions for Postconviction Relief and Amendment to Issue I (Claim 9); Order Granting Evidentiary Hearing and Order Setting Status Conference (Id.). An evidentiary hearing on Claims 1, 6(b), and 9 of Petitioner's Rule 3.850 motion was held on December 4, 2009 (Resp. Ex. 15). On February 1, 2010, the state post-conviction court filed its Final Order Denying Defendant's Motion for Post Conviction Relief in which the court 1) denied Claims 1 and 6b of Petitioner Rule 3.850 motion,[2] and 2) granted Claim 3, striking Petitioner's conviction for attempted home invasion robbery (Resp. Ex. 16). Because the attempted home invasion robbery conviction was stricken, the state trial court entered an amended judgment on February 3, 2010, indicating that the conviction was "stricken per court order of 1/29/10." (Id. at record p. 333).

Petitioner filed a petition for belated appeal of the February 1, 2010 Final Order, which the appellate court granted on October 27, 2010 (Resp. Ex. 17). On February 17, 2012, the appellate court affirmed the denial of the state post-conviction court's Final Order (Resp. Ex. 20); *Williams v. State*, 104 So. 3d 100 (Fla. 2d DCA 2012) [table]. The appellate court mandate issued on March 14, 2012 (Resp. Ex. 22).

Petitioner filed his federal habeas petition in this Court on April 27, 2012, raising six grounds for relief (Dkt. 1):

---

[2]During the evidentiary hearing, Petitioner abandoned and waived Claim 9 (Resp. Ex. 16 at record p. 330).

1. The state trial court erred in finding that probable cause was demonstrated in the affidavit for a warrant to be issued to search the Petitioner's home and that the items seized therein were admissible (Ground One);

2. The state trial court erred in not granting defense counsel's motion for a mistrial on the ground that the prosecutor published a misleading verdict form to the jury during closing argument (Ground One (a));

3. Trial counsel was ineffective

    a. in failing to have Petitioner evaluated for competency (Ground Two);

    b. in failing to move to dismiss the charges on the ground that Petitioner was denied a timely first appearance hearing (Ground Two (a));

    c. in failing to call Petitioner's father, Warren Williams, and step-mother, Rose Williams, to testify at the hearing on Petitioner's motion to suppress (Ground Two (b)); and

    d. in failing to call Warren and Rose Williams to testify at trial (Ground Two (c)).

## STANDARDS OF REVIEW

### Standard of Review Under the AEDPA

The petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Under AEDPA, habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) sets forth a highly deferential standard for federal court review of a state court's findings of law and fact. It provides that habeas relief may not be granted on a claim adjudicated on the merits in state court unless such determination:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has explained the deferential review of a state court's findings:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's factual findings must also be given deference. Specifically, a state court's determinations of fact "shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d 880, 890-91 (11th Cir. 2003).

**Ineffective Assistance of Counsel Standard**

To have a facially valid claim alleging ineffective assistance of counsel, Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas

5

courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

**Exhaustion of State Remedies and Procedural Default**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. See § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State. . .if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court

extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court *and alerts that court to the federal nature of the* claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529

U.S. 446, 451 (2000); *Carrier,* 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup,* 513 U.S. at 327.

## DISCUSSION

### I. Timeliness

Respondent contends that Petitioner's federal habeas petition is time-barred. The Court disagrees.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one year statute of limitations for seeking federal habeas corpus relief from a state-court judgment. 28 U.S.C. § 2244(d)(1). *Lawrence v. Florida*, 549 U.S. 327, 331 (2007). The limitation period runs from the latest of . . . "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . ." 28 U.S.C. § 2244(d)(1)(A). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

For purposes of § 2244(d), Petitioner's state judgment became final on March 5, 2010, upon expiration of the time for taking a timely appeal of the amended judgment entered on February 3, 2010. *See Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir. 2002) (where petitioner did not seek direct review of his judgment of conviction, judgment became "final" for purposes of § 2244 on the

date his 30-day right to appeal expired); *McGee v. State*, 684 So. 2d 241 (Fla. 2d DCA 1996) (treating judgment and sentence as final when time for appeal expired); *Gust v. State*, 535 So.2d 642 (Fla. 1st DCA 1988) (holding that when a defendant does not appeal his conviction or sentence, the judgment and sentence become final when the 30-day time period for filing an appeal expires).[3] Therefore, Petitioner's AEDPA limitation period commenced on March 6, 2010.

A period of 235 days elapsed between the date the judgment became final and the date that the state appellate court granted Petitioner's petition for belated appeal (of the Rule 3.850 proceedings) on October 27, 2010.[4] The appeal remained pending until the mandate issued on March 14, 2012. Another 43 days of the AEDPA limitation period elapsed before Petitioner filed his federal habeas petition on April 27, 2012. Therefore, a total of 278 days elapsed between March 6, 2010, when the AEDPA limitation period began to run, and April 27, 2012, when Petitioner filed his federal habeas petition. Accordingly, the federal habeas petition is timely.

## II. Merits

### Ground One

Following the homicide of Reginald Alexander on July 28, 2000, Detective Kneale obtained a search warrant of Petitioner's home on July 31, 2000 (Resp. Ex. 23, Vol. 2 at record pp. 138-39). The search warrant was obtained largely based on information obtained from two witnesses, Ruth

---

[3]The term "judgment" for purposes of § 2244(d) means Petitioner's underlying convictions and his "most recent" sentence. *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1292 (11th Cir. 2007) ("The judgment to which AEDPA refers is the *underlying conviction and most recent sentence* that authorizes the petitioner's current detention.") (emphasis added). Petitioner's "most recent sentence" was imposed on February 3, 2010, when the state trial court entered the amended judgment striking the attempted home invasion robbery conviction and 25-year prison sentence. Respondent omits the February 3, 2010 amended judgment from its timeliness analysis.

[4]The Court need not determine whether Petitioner's petition for belated appeal tolled the AEDPA's statute of limitation because even if it didn't, Petitioner's federal habeas petition was timely filed.

Jordan and Stephanie Howard (Id. at record pp. 141-42).   The search warrant was executed at

Petitioner's home on August 1, 2000 (Id. at record p. 135).   Defense counsel filed a motion to

suppress the evidence seized from Petitioner's home (Id. at record pp. 135-37).   The state trial court

held a hearing on the motion to suppress (Id. at record pp. 147-223).   During the hearing, defense

counsel argued that the affidavit for a search warrant did not demonstrate probable cause (Id. at

record pp. 153-79).   At the conclusion of the hearing, the trial court denied the motion to suppress

(Id. at record pp. 200-12).[5]

Petitioner contends that the trial court erred in failing to suppress the evidence seized at his

home because the search warrant affidavit did not demonstrate probable cause, apparently because

the information was provided to law enforcement by witnesses whose reliability was not established

in the affidavit.[6]   Respondent argues that this claim is precluded from federal review under *Stone v.*

*Powell*, 428 U.S. 465 (1986) (Dkt. 9 at pp. 14-17).   The Court agrees that *Stone v. Powell* precludes

federal review of Petitioner's claim.

"[W]hen the State has provided an opportunity for full and fair litigation of a Fourth

Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground

that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*

*v. Powell*, 428 U.S. at 494 (footnotes omitted).   In order to be entitled to federal habeas review of

---

[5]The trial court also granted defense counsel leave to file an amended motion to suppress to assert a facially sufficient *Franks* claim (Id. at record pp. 212-20).  *See Franks v. Delaware*, 438 U.S. 154 (1978) (evidence seized pursuant to a warrant will be suppressed where the warrant is based on an affidavit containing false statements that are shown to have been made knowingly and intentionally, or with reckless disregard for the truth, and the false statements were necessary to the finding of probable cause).   There is no indication from the record that defense counsel filed an amended motion to suppress asserting a *Franks* claim.

[6]"Evidence obtained in violation of the Fourth Amendment must be suppressed." *United States v. Jordan,* 635 F.3d 1181, 1185 (11th Cir. 2011).

a Fourth Amendment claim, the petitioner must demonstrate that he "was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." *Id.* at 495 n.37.

Petitioner was provided an opportunity for a full and fair litigation of his Fourth Amendment claim before the state trial court and appellate court (see Resp. Ex. 23, Vol. 2 at record pp. 147-223; Ex. 2).[7]  Additionally, Petitioner does not show or even allege that he was not provided an opportunity for a full and fair litigation of this claim during the state proceedings. Consequently, the Fourth Amendment claim is barred from federal review.  Accordingly, Ground One is dismissed.

**Ground One(a)**

Petitioner contends that the state trial court erred in denying Petitioner's motion for mistrial, made on the ground that during closing argument the prosecutor showed the jury a verdict form that listed all charges in the Indictment, but only showed the box on the verdict form indicating guilty. Petitioner argues that the verdict form tainted the jury by instilling in their minds that guilty was the only possible verdict on all charges, and therefore deprived Petitioner a fair trial.

Petitioner raised this claim on direct appeal (Resp. Ex. 2).  The state appellate court rejected it without discussion (Resp. Ex. 4).

Respondent contends that to the extent Petitioner attempts to assert a federal claim, it is unexhausted because Petitioner did not present the federal constitutional nature of his claim to the state courts (Dkt. 9 at p. 18).  The Court agrees.

Trial counsel did not present a federal constitutional claim to the trial court when moving for a mistrial (Resp. Ex. 23, Vol. 7 at transcript p. 1154 ).  Additionally, when Petitioner challenged the

---

[7] For the preclusion under *Stone v. Powell* to apply, a state court must issue findings of fact. *See Hearn v. Florida*, 326 Fed. App'x 519, 522 (11th Cir. 2009) (unpublished).  The state trial court made findings of fact at the conclusion of the hearing on Petitioner's motion to suppress (Resp. Ex. 23, Vol. 2 at record pp. 200-12).

denial of the motion for mistrial on direct appeal, he did not fairly present a federal constitutional violation to the appellate court (Resp. Ex. 2 at pp. 18-20). His Initial Brief cited solely to a state case, which was not decided on federal grounds (Id.). Petitioner did not indicate in any way that he intended to raise a federal claim, and nothing in his argument would have alerted the state appellate court to the presence of a federal claim (Id.).

A petitioner must present each federal claim to a state court before raising the claim in federal court. "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in state courts." *Henderson*, 353 F. 3d at 891 (citation omitted). "The AEDPA requires a state prisoner to exhaust all available state court remedies, either on direct appeal or in a state post-conviction proceeding." *Pearson v. Secretary, Dept. of Corrections*, 273 Fed. Appx. 847, 849 (11th Cir. 2008). As *Pearson* notes, federal claims must be presented in a manner that alerts the state court that "the ruling under review violated a federal constitutional right." *Id.* at 849-50. "A state prisoner does not 'fairly present' a claim to a state court if that court must read beyond. . .a brief" to find the federal claim. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

As discussed above, Petitioner's Initial Brief on direct appeal did not fairly present a federal constitutional claim to the state appellate court, and nothing in Petitioner's argument alerted the state appellate court to the presence of a federal claim. Petitioner's cursory and vague statement in his Initial Brief that "the State clearly violated the defendant's right to a fair trial. . ." (Resp. Ex. 2 at p. 19) was no more than a "needle in a haystack," and insufficient to present fairly to the state appellate court a federal constitutional issue. *See McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (exhaustion requires a habeas petitioner to do more than scatter some makeshift needles in the

haystack of the state court record) (citation omitted); *Zeigler v. Crosby*, 345 F.3d 1300, 1308 n.5 (11th Cir. Fla. 2003) (petitioner's state court brief which stated that he "was denied due process and a fair trial . . ." was "insufficient to present fairly to the state court the federal constitutional issue" because "this language could just be asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause"). Therefore, Petitioner failed to exhaust his federal claim.

Petitioner is now barred by state procedural rules from returning to state court to exhaust his federal claim because a second direct appeal of this issue is not available and would be untimely, and the claim may not be raised in a state post-conviction motion. *See Smith v. State*, 741 So. 2d 585 (Fla. 5th DCA 1999) (recognizing prohibition against successive appeals); *Claughton v. Claughton*, 393 So. 2d 1061, 1062 (Fla. 1980) ("The general law and our procedural rules at both the trial and appellate levels are designed for one final judgment and one appeal."); *Seminole County Bd. of County Comm'Rs v. Long*, 422 So. 2d 938, 942 (Fla. 5th DCA1982) ("The [Florida] constitution gives litigants the right to one appeal from initial judicial action."); Fla. R. App. P. 9.140(b)(3) (defendant wishing to appeal a final judgment must do so within "30 days following rendition of a written order"); Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."); *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.), *cert. denied*, 498 U.S. 832 (1990) (under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a Rule 3.850 motion). Petitioner's federal claim is therefore procedurally defaulted. Consequently, absent an exception to the procedural default, the claim is barred from review in this Court.

Petitioner has failed to show either cause and prejudice for the default, or that a fundamental miscarriage of justice will result if the claim is not addressed on the merits. Therefore, he is not

entitled to federal review of this claim. Accordingly, Ground One(a) does not warrant federal habeas relief.[8]

**Ground Two**

Petitioner contends that trial counsel was ineffective in failing to have Petitioner evaluated to determine whether Petitioner was competent to proceed to trial. In state court, Petitioner presented this claim as Ground One "A" of his Rule 3.850 motion (Resp. Ex. 8 at record pp. 43-44).[9] Following an evidentiary hearing, the state post-conviction court denied the claim, stating:

> Trial counsel testified that in his observations of and interactions with the Defendant there was never anything during the fairly lengthy period the case was pending that would have indicated any psychological issues with the Defendant; his notes and his memory did not indicate anything that would suggest any psychological problems, or questions, or any concern that would have caused trial counsel to ask for a competency evaluation.

> The Defendant testified differently, but he also indicated he never had asked for any help in state prison and never has been on any medication. Further, the Court noted that the Defendant was very lucid and understood what was going on at the Evidentiary Hearing.

> The Court finds the testimony of trial counsel to be more credible and specifically finds that the Defendant failed to meet his burden of proof as to the *Strickland* prongs. Accordingly, claim one is **DENIED**.

(Resp. Ex. 16 at record pp. 330-31).

The state post-conviction court's determination that Petitioner failed to demonstrate deficient performance was not objectively unreasonable, and was not based on an unreasonable determination of the facts. During the evidentiary hearing on the Rule 3.850 motion, Petitioner's trial counsel

---

[8]To the extent Petitioner asserts trial court error, that is a state law issue. A claim that solely involves state law is not cognizable in a § 2254 petition. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

[9]Petitioner also asserted in state court that had counsel obtained a psychologist to evaluate Petitioner, the psychologist's testimony "would have guaranteed a judgment of acquittal by reasons [sic] of insanity." (Id. at record p. 43).

testified that 1) he did not recall Petitioner ever asking him to get a psychological evaluation of Petitioner, and 2) nothing in the notes in his file indicated that Petitioner asked for a psychological evaluation (Resp. Ex. 15 at record p. 296). Additionally, counsel testified that "[t]here was never any indication that [Petitioner] was having any trouble understanding the concept of the process or the people involved or assisting me in any way in forming the defense or evaluating the case" and "there was never any doubt in my mind [Petitioner] understood what was going on. There was no issue of competency as far as I could see." (Id. at record pp. 297-98). Although Petitioner testified that during trial he "wasn't aware of what was going on" (id. at record p. 285), and prior to trial he told counsel that he "didn't understand what was going on up until trial so I didn't feel as though I would understand what was going on in trial" (id. at record p. 286), Petitioner admitted on cross-examination that at times he did not have any trouble discussing his case with counsel (id. at record p. 291), and that he never sought psychological care while in prison (id. at record p. 290-91).

The state post-conviction court found counsel's testimony more credible than Petitioner's testimony. The state court's credibility determination is presumed correct. See Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" the petitioner's.), cert. denied, 526 U.S. 1047 (1999); Devier v. Zant, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), cert. denied, 513 U.S. 1161 (1995). Relying only upon his unsupported contention of incompetency, Petitioner fails to overcome the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Additionally, the state post-conviction court's determination that Petitioner failed to demonstrate prejudice was not objectively unreasonable. "In order to demonstrate prejudice from

15

counsel's failure to investigate his competency, [a] petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (quoting *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988)). The federal standard for competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him. *See Godinez v. Moran*, 509 U.S. 389, 396-97 (1993) (citing *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam); *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). The Florida standard for competency to stand trial is the same. See Fla. Stat, Section 916.12(1) ("A defendant is incompetent to proceed within the meaning of this chapter if the defendant does not have sufficient present ability to consult with her or his lawyer with a reasonable degree of rational understanding or if the defendant has no rational, as well as factual, understanding of the proceedings against her or him.").

Petitioner does not demonstrate that any mental infirmity rendered him unable to understand the proceedings or consult with counsel. Although during the state evidentiary hearing Petitioner testified that he was depressed (Resp. Ex. 15 at record p. 286), no presumption exists that depression is sufficient to raise a question regarding a defendant's competency to stand trial. *See Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("'Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.'") (quoting *Card v. Singletary*, 981 F.2d 481, 487 (11th Cir. 1992); *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir.1984)). Petitioner cannot satisfy *Strickland*'s prejudice prong with mere speculation or conclusory allegations. *See Hill*

16

*v. Lockhart*, 474 U.S. 523 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Petitioner has failed to show that the state post-conviction court's denial of this ineffective assistance of trial counsel claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Two does not warrant federal habeas relief.

**Ground Two(a)**

Petitioner contends that counsel was ineffective in failing to move to dismiss the charges against Petitioner on the ground that Petitioner was denied a timely first appearance hearing. In state court, Petitioner presented this claim as Ground One "D" of his Rule 3.850 motion (Resp. Ex. 8 at record pp. 51-53). In denying the claim, the state post-conviction court stated:

> In claim 4 of his Motion Defendant asserts that his trial counsel was ineffective for failing to dismiss "all charges" because Defendant was denied a timely first appearance hearing. First, there is nothing in the court files or attached to Defendant's Motion that would support Defendant's assertions and the Court, of course, does not have access to booking sheets, arrest reports or court memos from outside jurisdictions. Second, even if Defendant was not afforded a timely first appearance hearing, the remedy is not a dismissal of the charges but the granting of a writ of *habeas corpus. See* Hill v. State, 739 So. 2d 634, 635 (Fla. 4th DCA 1999). Therefore, because even if the claim had merit counsel could not have legally pursued a dismissal of "all charges," **claim 4 is DENIED.**

(Resp. Ex. 9 at record pp. 66-67).

Initially, the record appears to belie Petitioner's contention that he did not receive a timely first appearance hearing. Rule 3.130 (a), Fla.R.Crim.P., provides, in pertinent part, that "every

arrested person shall be taken before a judicial officer, either in person or by electronic audiovisual device in the discretion of the court, within 24 hours of arrest." According to the record, Petitioner was arrested on September 11, 2001 (Resp. Ex. 23, Vol. I at record pp. 1, 67), and his first appearance hearing was held on September 12, 2001 (Id. at record p. 2).[10] Because Petitioner received a timely first appearance hearing, counsel was not deficient in failing to move to dismiss the charges on the ground that Petitioner was deprived of a timely first appearance hearing.

Additionally, even if Petitioner did not receive a timely first appearance hearing, the state court has answered the question of what would have happened had defense counsel moved to dismiss the charges on the ground that Petitioner did not receive a timely first appearance hearing - - the motion would have been denied.[11] Consequently, Petitioner has failed to establish deficient performance or prejudice. *See e.g., Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).

Petitioner has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Accordingly, Ground Two(a) does not warrant federal habeas relief.

---

[10]Petitioner has provided no evidence indicating that he was arrested on a date other than September 11, 2001, or that his first appearance hearing was held on a date other than September 12, 2001.

[11]The state post-conviction court concluded that Petitioner's remedy would have been a writ of habeas corpus directing the trial court to bring Petitioner before the court for a first appearance rather than dismissal of the charges (Resp. Ex. 9 at record p. 67). *See Hill v. State*, 739 S. 2d 634 (Fla. 4th DCA 1999).

**Grounds Two(b) and Two(c)**

Petitioner contends that counsel was ineffective in failing to call Petitioner's father, Warren Williams, and step-mother, Rose Williams, to testify at 1) the hearing on Petitioner's motion to suppress, and 2) at trial. Petitioner asserts that these witnesses would have testified that Petitioner was home with them at the time of the crime.

In state court, Petitioner presented these claims, or similar claims, in both Ground One "B" and Ground One "F" of his Rule 3.850 motion (Resp. Ex. 8 at record pp. 44-46, 55-57). With regard to his claim that counsel should have called these witnesses during the hearing on his motion to suppress, Petitioner asserted that he "demanded that these people [Warren and Rose Williams] be received by the courts at the suppression hearing and be voluntarily tested for DNA purposes to make an 100% match of 13 for 13 to negate the State's purported assumption that the 12 of 13 DNA found on the shorts seized "improperly" from a known residence of Nicholas Williams belonged solely to the victim." (Id. at record p. 56).[12] Petitioner argued "that the DNA [found on the shorts] could have come from himself, or it could have come from several family or friends who had access to his clothes and would also wear them." In summarily denying the claim, the state post-conviction court stated:

> In claim 6 of his Motion Defendant asserts that trial counsel was ineffective for failing to call two alibi witnesses, his father, Warren G. Williams, and his step-mother, Rose Williams, for either the trial or the above-discussed suppression hearing. To the extent Defendant asserts the witnesses should have been called to testify at the suppression hearing (delineated as claim 6(a) herein), the claim is **DENIED**. See response to claim 2 above, incorporated herein.

(Resp. Ex. 9 at record p. 67) (emphasis in original).

---

[12]During Petitioner's trial, the State's DNA expert testified, in pertinent part, that DNA found on the shorts seized during the search of Petitioner's home matched the DNA obtained from the blood of the victim (Resp. Ex. 23, Vol. 6 at transcript p. 968).

In summarily denying claim 2 of the Rule 3.850 motion, the state post-conviction court stated in pertinent part:

> In response to claim 2 as made in the original Motion 3.850 Postconviction Relief and as amended in paragraph 2 of his Motion to Submit Revised Ground to Motion for Postconviction Relief (delineated herein as claim 2(a) for purposes of clarity) the Court finds the claim must be denied. Defendant asserts that the trial court allowed for the amendment of his Motion to Suppress and the "issue was an erroneous search warrant...Where the police investigator did not clearly stipulate the precise item that he wished to find[.]" Motion at 7. Accordingly, counsel should have "return[ed] to the court to complete the suppression hearing...but include that his own DNA be tested from the DNA removed from the shorts at issue to rule out the notion that the DNA found on the shorts was actually from the victim" and call witnesses to establish he did not have sole access to the shorts. *Id.*
>
> Defendant is mistaken. The amendment was allowed for the purpose of setting forth a facially sufficient *Franks* claim. *See* transcript of suppression hearing at 66-76, a copy of which is attached. It was not allowed for the purpose of rearguing issues already addressed and ruled upon by the trial court. *See id.* Since the issue of whether there was probable cause for the seizure of the clothing found and recovered was addressed and ruled upon by the trial court at the conclusion of the suppression hearing, *see id.* at 56-57, there was no legal basis upon which counsel could have "return[ed] to the court to complete the suppression hearing" on the grounds raised by Defendant. Thus, because there was no legal basis to further pursue the Motion to Suppress upon the grounds raised by Defendant, counsel could not be ineffective for failing to pursue it. Based on the forgoing, claim 2(a) is **DENIED**.

(Resp. Ex. 9 at record pp. 64-65) (footnote omitted) (alterations and emphasis in original).

The state post-conviction court's denial of this claim was not objectively unreasonable. At the conclusion of the hearing on Petitioner's motion to suppress, the state trial court granted Petitioner leave to file an amended motion to suppress to pursue a *Franks* claim (Resp. Ex. 23, Vol. 2 at record pp. 212-21). There is no indication in the record that defense counsel was granted leave to amend the motion to suppress to raise any argument other than a *Franks* claim. The state post-conviction therefore found that counsel could not amend the motion to suppress to assert the ground Petitioner allegedly told counsel to pursue, namely, that the DNA evidence discovered on

Petitioner's shorts should be suppressed because it was Petitioner or his parents' DNA rather than the victim's DNA. Accordingly, the state post-conviction court concluded that counsel did not render deficient performance. Petitioner raised this claim on appeal (Resp. Ex. 18), and the appellate court affirmed without a written opinion (Resp. Ex. 20).

The state courts have answered the question of what would have happened had defense counsel attempted to move to amend the motion to suppress to assert the ground Petitioner wanted counsel to pursue - - the motion would have been denied. Consequently, Petitioner has failed to establish deficient performance. *See Callahan v. Campbell*, 427 F.3d at 932.

Additionally, Petitioner has failed to demonstrate prejudice. Petitioner has offered no more than a conclusory and speculative assertion that the DNA found on his shorts "could have been" his DNA, Warren Williams' DNA, or Rose Williams' DNA. He has not alleged or presented any evidence demonstrating or suggesting that the DNA found on the shorts came from anyone other than the victim.[13] Petitioner cannot satisfy *Strickland*'s prejudice prong with mere speculation or conclusory allegations. *See Hill v. Lockhart*, 474 U.S. 52; *Tejada v. Dugger*, 941 F.2d at 1559.

Petitioner has failed to show that the state courts' denial of this ineffective assistance of trial counsel claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Two(b) does not warrant federal habeas relief.[14]

---

[13] The State's DNA expert testified that the blood recovered from Petitioner's shorts matched the victim's DNA profile, and the profile is expected to occur in only 1 in 486 quadrillion African-Americans (Resp. Ex. 23, Vol. 6 at transcript pp. 968-69).

[14] To the extent Ground Two(b) can be liberally construed as also asserting a claim that counsel was ineffective in failing to pursue a *Franks* claim, the claim is procedurally barred from review. To exhaust state remedies, a state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt*, 348 F.3d at 1358-59 (quoting *O'Sullivan*, 526 U.S. at 845). *See also Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (stating that exhaustion of a claim raised in a Rule 3.850 motion includes an appeal from the denial of the motion). Petitioner did not assert this ineffective assistance of counsel

Ground Two(c) likewise does not warrant relief. After conducting an evidentiary hearing, the state post-conviction court denied Petitioner's claim that trial counsel was ineffective in failing to call alleged alibi witnesses Warren and Rose Williams to testify at trial. In denying the claim, the state post-conviction court stated:

> The Defendant's father and step-mother testified that trial counsel never talked to them and that they would have testified the Defendant was home with them when the crimes occurred.
>
> Trial counsel testified he talked to both the Defendant's father and step-mother. His father related to trial counsel that he was home the evening of the crimes, but as he was watching television, he dozed off, slept some, woke up, and slept some. Trial counsel talked with the Defendant's step-mother on a number of occasions and the issue of alibi never was brought up or suggested.
>
> In formulating the defense in the case, trial counsel also considered the statement made by the Defendant to the detectives that he was there, but did not kill the victim. The Defendant testified in the Evidentiary Hearing that he did not make the statement to the detectives, but trial counsel was faced with the detectives' testimony that he did. In addition, there were multiple co-conspirators placing the Defendant at the scene or involved in the situation as well as the victim's blood on the Defendant's shorts which would place him at the scene.
>
> Ultimately, the defense was that the Defendant was there, but was not the person who actually killed the victim, nor did he have any real knowledge of what was going to happen in regard to the murder itself.
>
> The Court finds trial counsel's testimony to be more credible than the Defendant's witnesses. He has not met the burden of proof under the *Strickland* standard. Accordingly, claim 6(b) is **DENIED**.

---

claim on appeal from the denial of Rule 3.850 relief (Resp. Ex. 18). The claim is now procedurally defaulted because any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, since the state rule requiring submission of an appellate brief bars Petitioner from returning to state court to challenge the denial of this claim in a second appeal of the denial of the Rule 3.850 motion, see Fla. R. App. P. 9.141(b)(3)(C), and any further attempt to raise the claim in another Rule 3.850 motion would be subject to dismissal as untimely and successive. See Fla. R. Crim. P. 3.850(b), (h). Additionally, even if this claim was not procedurally barred, Petitioner still would not be entitled to relief because his allegations with regard to this claim are wholly vague and conclusory. *See Tejada*, 941 F.2d at 1559 (a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'") (citation omitted).

(Resp. Ex. 16 at record pp. 331-32) (emphasis in original).  Petitioner appealed the state post-conviction court's denial of his Rule 3.850 motion, and the appellate court per curiam affirmed the denial without written opinion (Resp. Ex. 20).  This Court finds that the state courts' denial of this claim was neither an unreasonable application of *Strickland*, nor based on an unreasonable determination of the facts.

During the Rule 3.850 evidentiary hearing, Warren Williams testified that on the night of the crime, he was at home watching television with Petitioner and Rose Williams (Resp. Ex. 15 at record pp. 269-70).  He testified that Petitioner was watching television with them between 11:00 and 12:00 o'clock, then left the room to lie down on a sofa (Id. at record p. 270).[15]  He testified that he did not remember ever speaking with Petitioner's attorney, but did recall speaking to the attorney's investigator (Id. at record pp. 274-75).  He remembered telling the police that he knew Petitioner was home until at least 12 o'clock, but does not recall telling that to the investigator (Id. at record p. 275).

Rose Williams testified that on the night of the crime, she and Warren Williams were watching a movie in their bedroom with Petitioner between approximately 11:00 and 12:00 o'clock (Id. at record pp. 278-79).  She stated that after the movie ended, Petitioner went into the living room and on to the couch (Id. at record pp. 279, 282).  She further testified that she never talked to Petitioner's attorney and did not even know his name (Id. at record p. 282).  She admitted, however, that she "might have called [Petitioner's attorney] a couple times just to ask him what was going on" but "talked to an assistant." (Id. at record p. 283).

---

[15]Evidence at trial indicated that the crime occurred at approximately midnight (see, e.g., Resp. Ex. 23, Vol. 5 at transcript p. 632).

Petitioner testified that on the night of the crime he was home watching "Comic View." (Id. at record p. 289). He stated that the show was on "11:00 to 12:00 then probably re-run again probably 1:00 - - 2:00 in the morning." (Id.). He further testified that he told counsel that he was with Warren and Rose Williams on the night of the crime, and that he wanted counsel to call them as witnesses (Id. at record p. 291). Petitioner denied he told counsel that he was with Ruth Jordan on the night of the crime (id.), and denied giving an officer a statement that he was present during the shooting, but did not kill the victim (Id. at record pp. 293-94).

Counsel testified that his file contained "a notation concerning alibi" that included "two names. . .[Petitioner's] father and. . .Ruth Jordan." (Id. at record p. 298). Counsel stated that he did not pursue Ruth Jordan as an alibi witness because she had given a statement to law enforcement that on the night of the crime she had driven Petitioner to his grandmother's house, dropped him off there, and picked him up later that night (Id. at record pp. 298-99). Counsel did however talk to Petitioner's father, Warren Williams (Id. at record pp. 299-300). According to counsel, Williams stated that he saw Petitioner on the night of the crime, but "fell asleep off and on during the course of the evening and ultimately . . .went to bed and. . .couldn't really say one way or the other where [Petitioner] was." (Id. at record p. 300). Counsel recalled speaking to Rose Williams "a number of times" regarding "the progress of the case," but did not recall and did not have any notes indicating whether he spoke to her regarding an alibi (Id. at record pp. 301-02). Counsel opined that in light of 1) Petitioner's alleged statement to a detective admitting that he was present at the scene of the crime, 2) the statements from Petitioner's co-defendants placing Petitioner at the scene of the crime, and 3) the victim's blood on Petitioner's shorts, it would have been difficult to pursue an alibi defense (Id. at record pp. 300-01).

24

The state post-conviction court found "trial counsel's testimony to be more credible than the Defendant's witnesses." (Resp. Ex. 16 at record p. 332). "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Therefore, the state post-conviction court's credibility determinations may not be disturbed unless they are unreasonable in light of the evidence. *Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007).

Petitioner has not shown by clear and convincing evidence that the state court's credibility determinations were unreasonable.[16] Counsel testified during the evidentiary hearing that he had notes indicating that he was provided with two possible alibi witnesses, Ruth Jordan and Warren Williams, but neither provided a viable alibi defense. Additionally, counsel testified that although he recalled speaking to Rose Williams several times, he had no recollection or notes indicating that she ever mentioned an alibi for Petitioner. In light of this testimony, and in light of the fact that counsel was faced with 1) the co-defendants' testimony that Petitioner was at the scene of the crime, 2) Petitioner's statement to law enforcement that he was at the scene of the crime, and 3) the evidence showing that the victim's blood was on Petitioner's shorts, counsel's decision not to pursue an alibi defense and call Warren and Rose Williams to testify was sound strategy. *See Blanco v.*

---

[16]For purposes of federal habeas review, "credibility determinations are findings of fact presumed to be correct unless rebutted by clear and convincing evidence." *Tharpe v. Humphrey*, 2014 U.S. Dist. LEXIS 28438, at *57 n.19 (M.D. Ga. Mar. 6, 2014) (citing *Bottoson v. Moore*, 234 F.3d 526, 534 (11th Cir. 2000)).

*Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."). Therefore, Petitioner has failed to demonstrate deficient performance.

Additionally, Petitioner has failed to demonstrate prejudice. In light of the strong evidence placing Petitioner at the scene of the crime, Petitioner cannot show that Warren and Rose Williams' testimony would have likely changed the result of the trial. This is especially true because Warren Williams is Petitioner's father, and Rose Williams is Petitioner's step-mother, and their testimony would likely have been viewed with suspicion by the jury. *See, e.g., Ball v. United States*, 271 Fed. App'x 880, 884 (11th Cir. 2008) (unpublished) ("Ball's alibi witnesses were all close family members with a strong motive to fabricate an alibi defense for him. As such, their testimony would not have been particularly compelling and would have been subjected to vigorous impeachment.").

This Court cannot say that the state courts' rejection of this claim was an unreasonable application of *Strickland*. Accordingly, Ground Two(c) does not warrant federal habeas relief.

ACCORDINGLY, it is **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability (COA). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a COA. Id. Petitioner is

only entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's procedural ruling was correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." Id.; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack*, 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Petitioner cannot make the requisite showing because he cannot demonstrate that reasonable jurists would debate whether the Court's procedural rulings were correct, or whether the petition stated a substantial denial of a constitutional right. And because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on ___JuNE 24th___, 2015.

**JAMES D. WHITTEMORE**
**United States District Judge**

SA:sfc
Copy to: *Pro se* Petitioner
   Counsel of Record